## Alexa v. Alexa

*James B. Ceris,* for plaintiff.
*Gretchen Sohn Reed,* for defendant.

MANNIX, *J.,* August 20, 1982—This matter comes before the court on plaintiff's petition for a declaratory judgment under the provisions of the Uniform Declaratory Judgment Act, 42 Pa.C.S.A. § 7537, et seq. Plaintiff asks this court to determine the respective interests and rights of himself and his present wife, Bammie Alexa, under the terms of an antenuptial agreement and several deeds. Plaintiff also asks the court to determine whether his wife is an indispensable party to the conveyance of the property in question. Plaintiff further seeks a determination of the interests in the subject property of his two daughters, Elvira and Darlene Alexa.

The property in question consists of Lots 590, 591, 592, 593 and 594 in the Charles A. Dickson Plan No. 12 in the Fourth Ward of the Borough of Ambridge and Lot 738 in the Charles A. Dickson Plan No. 14 in the Fourth Ward of the Borough of Ambridge (formerly Harmony Township), all located within Beaver County, Pa.

The history of events relevant to this matter is as follows. Between 1945 and 1951, Paul Alexa and his first wife, Julia, acquired all of the property in question as tenants by the entireties. In 1955, Julia died, leaving Paul the survivor and sole owner of the subject property. In 1960 Paul Alexa conveyed Lots 590 through 594 to himself and his daughter Elvira, as joint tenants with right of survivorship. Said deeds did not include Lot 738.

In January 1961, Paul Alexa signed an antenuptial agreement with his then intended wife, Bammie, in which she relinquished all her rights to any real or personal property her husband then owned or later might own, specifically naming the real property now in question. In exchange for relinquishing any present or future rights, Bammie agreed to receive a life estate interest in the subject real property if she survived Paul. Paul and Bammie were married later that same year and the terms of the antenuptial agreement took effect.

In 1963, Elvira Alexa re-conveyed to her father, Paul Alexa, her undivided one-half interest in the aforesaid Lots 590 throught 594, thus again vesting full and complete ownership of the subject properties in Paul Alexa.

In 1978, Paul Alexa conveyed to his daughter, Elvira, and himself, as joint tenants with right of survivorship, an "undivided 50 percent interest of the entire interest" in Lots 590 through 594. This, in effect, gave Elvira a 25 percent interest in said property. In addition, Paul Alexa executed a deed in 1978 to himself and daughter Elvira for Lot 738, which deed, unlike those for Lots 590 through 594, vested a 50 percent interest to said property in each of them as joint tenants with right of survivorship.

In May 1979, Paul Alexa along with his wife Bammie Alexa executed a series of five deeds to

Elvira Alexa and Darlene Alexa, which deeds had the effect of vesting in Elvira Alexa a 50 percent interest and in Darlene Alexa a 50 percent interest, as tenants in common, in the aforesaid Lots 590 through 594 and Lot 738.

It is significant that in each of these five deeds Bammie Alexa joined as a grantor although never appearing as a grantor in any previous deed. In addition, each deed contained the following language:

"The interest herein conveyed is subject to a life estate hereinafter mentioned.

### AND

This conveyance is made subject to a life estate reserved to the grantors herein for and during the life term of the survivor of them."

As a result of her joinder in the five 1979 deeds, and the reservation of a life estate language used in each deed, Bammie claims that she now has a present life estate in the subject real property.

Said issue is significant at this particular moment since Paul Alexa has negotiated a sale of the subject properties for $110,000 and along with daughter Darlene has executed the agreement of sale. Bammie Alexa and Elvira Alexa have yet to sign said agreement.

The evidence shows that prior to 1979, Bammie Alexa never became the owner of record of any interest in the property she purported to convey through the 1979 deeds. The general rule provides that a stranger to the title who joins as a grantor in a deed which contains a reservation to the grantors gains no interest in the estate reserved. Although the Pennsylvania Courts have not addressed this particular question to date, courts of several states

have held that a spouse's joinder in a deed of the grantor's separately owned property, and any consequent release of inchoate rights such as dower and homestead, have rendered the spouse no longer a stranger to the title. These courts, which include Illinois, Michigan and Kentucky, reasoned that the rights which the spouse acquires through marriage are sufficient to make her no longer a stranger to the title. Therefore, a wife joining her husband as a grantor in a deed to convey the husband's separately owned property with a reservation to the grantors would receive a present life estate so long as she was relinquishing her inchoate rights by joining in said deed: Saunders v. Saunders, 373 Ill. 302, 26 N. E. 2d 126 (1940); Board of Missions of Methodist Episcopal Church, South v. Mayo, 81 F. 2d 449 (6th Cir. 1936) (applying Kentucky law); Engel v. Ladewig, 153 Mich. 8, 116 N. W. 550 (1908); Glasgow v. Glasgow, 221 S. C. 322, 70 S. E. 2d 432 (1952); see also, 52 A.L.R. 3d § 10. This is good, sound reasoning and would be adopted as Pennsylvania law by this court if it were the controlling issue in this case.

The present case, however, differs significantly from the above-cited cases because of paragraph six of the antenuptial agreement of January 1961, which states as follows:

"6. Said intended Wife, in consideration of the foregoing promises and covenants assumed by the Intended Husband, does hereby agree to disclaim and release, and does hereby release and disclaim and relinquish to Intended Husband, his heirs, legal representatives, assigns, legatees, and devisees, all and singular, all and every right, claim, estate, actual, inchoate or contingent, of every kind and character, she might, would, or could have,

hold or acquire in, to, or upon all or any of said property, real and personal, and particularly said automobile agency and garage business and the used automobile business in connection therewith, by reason of said marriage and by reason of being, or by reason of having been the wife of Paul Alexa, Intended Husband."

Defendant Bammie Alexa cannot rely on the theory that spouses are not strangers to title where they release dower, homestead and/or inchoate rights by joining as a grantor in a deed conveying their spouse's separately owned realty because she agreed to release, through the antenuptial agreement of January 1961 any inchoate interest she may have in her husband's separately owned property, then owned or later acquired. Therefore, her joinder in the 1979 deeds did not have the effect it otherwise would have had of reserving a present life estate in her. Nor did it have the effect of enabling her to benefit from application of the "no longer a stranger to the title" theory.

In the alternative, Bammie claims she is entitled to 20 percent of the net proceeds of a sale of the subject properties under the terms of paragraph eight of the 1961 antenuptial agreement which she executed along with Paul Alexa. Paragraph eight of that agreement states as follows:

"8. Said Intended Wife further agrees to execute and acknowledge, upon the request of PAUL ALEXA, Intended Husband, or of his heirs, devisees, personal representatives or assigns, any and all proper instruments of releases or conveyances to enable said Intended Husband, or his heirs, devisees, personal representatives or assigns, to bargain, sell, convey, release or otherwise dispose of, any and all real estate now owned or hereafter ac-

quired by said Intended Husband, free and clear of any and all rights, interests, or claims, including inchoate intestate rights, of said Intended Wife; provided, however, that the joinder of said Intended Wife by her execution of any such deeds, documents, etc. shall constitute a release by said wife of her life estate interest in any such real estate now owned and which said husband may sell during coverture and while these parties are cohabiting together; provided further, that the Husband shall pay unto said Wife twenty (20) percent of the net proceeds received by said Husband from such sale consideration price at the time thereof."

Bammie Alexa joined in the execution of the 1979 deeds at the request of Paul Alexa, her husband. Having determined that Bammie Alexa holds no present life estate interest in the property under the "no stranger to the title" theory by virtue of her execution of the January 1961 antenuptial agreement, the court must now determine whether she had any future life estate interest which would be sufficient to invoke the operation of paragraph eight of the antenuptial agreement.

Paragraph one of the antenuptial agreement gives Bammie a life estate in Paul's interest in the subject real estate if Paul predeceases her Paragraph one states as follows:

"1. It is mutually agreed that in the event of the death of said Intended Husband prior to the death of said Intended Wife, said Intended Wife shall have a life estate in the aforesaid undivided fifty (50) percent interest owned by said Paul Alexa in the aforementioned real estate, and upon her death said real estate shall go to the heirs at law of Paul Alexa, either intestate or under such directions as

said Paul Alexa may make or direct by his Will, as Testator."

This paragraph has the effect of giving Bammie a future life estate interest, namely, a life estate subject to a condition precedent. The condition precedent is the death of Paul Alexa prior to Bammie Alexa's death.

Paragraph eight, quoted above, refers to the release of the wife's "life estate interest" in any property that the husband now owns or hereafter acquires and wishes to sell. It also provides that upon execution of the conveying instrument the wife shall receive 20 percent of the net proceeds of the sale in return for said relinquishment. Although Bammie Alexa has no present life estate interest, she does have a future life estate interest by reason of the language in paragraph one of the antenuptial agreement sufficient to invoke the operation of paragraph eight.

Conditional life estates are recognizable interest in property in Pennsylvania. Owners of future interests can assign, transfer or otherwise alienate those interests: Whelan v. Phillips, 151 Pa. 312, 25 Atl. 44 (1892); In re Robbins' Estate, 199 Pa. 500, 49 Atl. 233 (1901). Furthermore, owners of contingent interests can bring suit to prevent waste: 12 Pa. Stat. §1468 [repealed, see 42 Pa.C.S.A. §1722(a)(1).] Because Bammie Alexa has a recognizable future life estate interest in the subject real property and paragraph eight requires that she relinquish a "life estate interest," not specifying whether that interest must be present, future, vested or contingent, and Bammie Alexa has met all other requirements of paragraph eight, Paul Alexa must pay her 20 percent of the net proceeds derived from any sale of the subject properties as agreed to

by the parties in the antenuptial agreement of January 1961.

The task remains to determine which parties are indispensable to a deed conveying the subject property. By operation of the 1979 deeds, Elvira and Darlene Alexa each acquired 50 percent fee ownership of the property in question, subject to Paul Alexa's present life estate interest in some of this property. Elvira Alexa and Darlene Alexa are indispensable parties to any deed since they now own the fee subject to Paul Alexa's present life estate interest. Paul Alexa is an indispensable party to the sale to the extent that he must relinquish his present life estate interest. Bammie Alexa relinquished her future life estate interest through the operation of the antenuptial agreement and her joinder in the 1979 deeds. Thus, she is not an indispensable party to a deed conveying the subject property, but she will receive 20 percent of the net proceeds of sale for the reasons set forth above.

For the foregoing reasons, the following decree is entered

## ORDER

And now, August 20, 1982, after consideration of all evidence produced, including particularly the pertinent deeds recorded between 1960 and 1979, as well as the antenuptial agreement of January 1961; it is hereby ordered, adjudged and decreed that:

1. Bammie Alexa had a relinquishable future life estate interest in the subject realty which interest she has relinquished by executing the various 1979 deeds.

2. That by reason of relinquishing her future life estate in the subject realty through joining as a grantor in the various 1979 deeds Bammie Alexa

has met all requirements of Paragraph 8 of the January 1961 antenuptial agreement and is entitled to 20 percent of the net proceeds derived from any sale of the subject realty.

3. That Bammie Alexa is not an indispensable party to any deed or deeds conveying the subject property but Paul Alexa, Elvira Alexa and Darlene Alexa are essential grantors.