In re John W. HOWARD, Debtor.

Carlota M. Bohm, (Trustee for the Bankruptcy Estate of John W. Howard), Plaintiff,

v.

Victoria M. Howard, Defendant.

Bankruptcy No. 08–22224JAD.
Adversary No. 09–02127JAD.

United States Bankruptcy Court,
W.D. Pennsylvania.

Jan. 15, 2010.

Carlota Bohm, Pittsburgh, PA, Chapter 7 Trustee.

Mary–Jo Rebelo, Pittsburgh, PA, for Chapter 7 Trustee.

Avrum Levicoff, Beckley, WV, for Victoria M. Howard.

Robert O. Lampl, Pittsburgh, PA, for John W. Howard.

### *MEMORANDUM OPINION*

JEFFERY A. DELLER, Bankruptcy Judge.

The matters[1] before the Court are the Trustee's *Motion to Compel Compliance With December 1 and 10, 2009 Orders of Court and for Contempt and Sanctions* (the "Motion to Compel"), the Defendant's *Motion for Stay of Orders Pending Appeal* (the "Motion for Stay Pending Appeal"), and the Defendant's *Motion to Clarify Victoria Howard's Motion to Stay and Victoria Howard's Response to the Trustee's Motion for Contempt and/or Sanctions* (the "Motion to Clarify").[2] For the

---

1. This Court has proper jurisdiction over these matters pursuant to 28 U.S.C. § 1334(b). The motions before the Court constitute core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (F), (G), (H) and (O).

2. On January 5, 2010 Defendant filed a pleading captioned *Motion to Clarify Our Motion to Stay and Our Response to the Trustee's Motion for Contempt and/or Sanctions* (Doc. # 77). Due to a failure to comply with various docketing requirements, Defendant refiled the motion on January 6, 2010 captioned as a *Motion to Clarify Victoria Howard's Motion to Stay Order and Victoria Howard's Response to the Trustee's Motion for Contempt and/or Sanctions* at Doc.# s 79, 81 and 84. The

reasons set forth below, an order shall be entered which grants the Trustee's Motion to Compel. This order shall also deny both the Defendant's Motion for Stay Pending Appeal and the Defendant's Motion to Clarify.

## I. *Background*

The Court writes primarily for the parties who are familiar with the background of this case, which is set forth more fully in this Court's *Memorandum Opinion* dated December 10, 2009. *See Bohm v. Howard (In re Howard)*, 422 B.R. 568, 2009 WL 4729674 (Bankr.W.D.Pa.2009).

Each of these motions before the Court concern the Defendant's failure to comply with two orders of this Court. Those two orders consist of a bench order of December 1, 2009 and this Court's written order of December 10, 2009.

The two orders at issue, which granted partial summary judgment in favor of the Trustee in this adversary proceeding, determined that (a) certain Mineral Rights located in Greene County, Pennsylvania (and associated proceeds relating to the same) constitute property of this bankruptcy estate in which the Trustee holds a superior interest, (b) any interest claimed by Ms. Howard in the Mineral Rights and associated proceeds is void, (c) such property is protected by the automatic stay of 11 U.S.C. § 362(a), (d) Ms. Howard violated the automatic stay by unilaterally taking control of property of the estate and conveying the same to her without consent of the Trustee and without an order of this Court, (e) the Defendant, Ms. Howard, is required to immediately turnover the proceeds of the Mineral Rights to the Trustee,

and (f) the Defendant, Ms. Howard, is liable for all Mineral Rights' proceeds that she has dissipated and for damages as a result of her willful violation of the automatic stay.

After the Court issued its December 1, 2009 bench order, but before the issuance of both the Court's December 10, 2009 written order and associated *Memorandum Opinion*, the Defendant filed a notice of appeal. No motion for stay pending appeal was immediately filed by the Defendant; nor did the Defendant relinquish possession and control of the approximately $471,000 of Mineral Rights' proceeds to the Trustee.[3]

After this Court issued its December 10, 2009 *Memorandum Opinion* and written order, Ms. Howard continued to refuse to turnover the $471,000 of proceeds. As a result, on December 16, 2009, the Trustee filed her Motion to Compel.

On December 18, 2009, the Defendant filed her written objection to the Trustee's Motion to Compel. On that same date, the Defendant also filed her Motion for Stay Pending Appeal. Thereafter, on December 22, 2009, the Court held a hearing on the Motion to Compel and the Motion for Stay Pending Appeal.

In response to the Motion to Compel, the Defendant makes two arguments as to why the Motion to Compel should not be granted. First, the Defendant argues that the Motion to Compel was prematurely filed pursuant to Fed.R.Civ.P. 62 as incorporated into Fed.R.Bankr.P. 7062. Second, the Defendant argues that the Motion to Compel is without merit because the

Court treats these filings as the same motion and refers only to the motion filed at Dkt. # 84 in this *Opinion*.

**3.** The Defendant had collected approximately $600,000 as a result of her leasing the Mineral Rights without the consent and/or approval

of the Trustee and this Court. According to accountings filed by Ms. Howard, the Defendant had spent approximately $129,000 of the proceeds, which resulted in only approximately $471,000 remaining.

Defendant is allegedly entitled to a stay pending appeal pursuant to Fed. R.Bankr.P. 8005.[4] Naturally, the Trustee disputes these contentions.

## II. *The Request for Stay Pending Appeal*

Because Ms. Howard is utilizing the Motion for Stay Pending an Appeal as a defense to the Motion to Compel, the Court will first address the merits of the Motion for Stay Pending Appeal.

■ The Court must consider four factors when ruling on the motion for stay pending an appeal. Those factors are: (1) whether the movant is likely to succeed on the merits of the appeal; (2) whether the movant will suffer irreparable injury if a stay is not granted; (3) whether a stay would substantially harm other parties in the litigation; and (4) whether a stay is in the public interest. *See In re Countrywide Home Loans, Inc.,* 387 B.R. 467, 471 (Bankr.W.D.Pa.2008)(citing cases, including *Republic of Philippines v. Westinghouse Elec. Corp.,* 949 F.2d 653, 658 (3d Cir.1991)).

The Court notes that the failure to satisfy any one of the four factors set forth above might not necessarily be fatal to a motion for stay pending appeal. Rather, to determine whether a stay pending appeal is warranted, the Court is to balance each of the factors at issue and examine individualized considerations relevant to the case. *Id.*

### A. Likelihood of Success on the Merits

Several approaches have been utilized by various courts when analyzing whether a movant seeking a stay has a likelihood of succeeding on appeal. For example, some courts focus on the strength of the case the movant will present on appeal. *See id.* (citing *In re Polaroid Corp.,* 2004 WL 253477 *1 (D.Del.2004)). As my colleague Judge Thomas Agresti noted: "Taking this approach does put a court in the somewhat awkward, though not impossible, position of trying to objectively assess the likelihood that its ruling will be upheld on appeal." *Id.*

To avoid the difficulties imposed by this form of self-assessment, other courts have focused "on whether the movant seeks to raise issues on appeal that are substantial, serious, and doubtful so as to make them fair ground for litigation." *Id.* (citing *In re Lickman,* 301 B.R. 739, 743 (Bankr. M.D.Fla.2003)).

In addition, a few other courts have adopted a "sliding scale" measure under which a court will examine the strength of the case on appeal, relative to the hardships to be suffered if a stay is not granted. *Id.* at 472 (citing *In re Cujas,* 376 B.R. 480, 486 (Bankr.E.D.Pa.2007)).

■ Under any of these approaches, this Court finds that Ms. Howard has not shown a likelihood of success on appeal.

From the outset, the Court notes that Ms. Howard's Motion for Stay Pending Appeal does not really discuss how Ms. Howard's appeal will be successful. Rather, the motion merely recites the issues she will present on appeal without much of any legal analysis. *See* Motion for Stay Pending Appeal, Dkt. # 70, at pp. 5–9.[5]

---

**4.** The Court notes that the Motion for Stay Pending Appeal makes no mention of Fed. R.Bankr.P. 8005. Notwithstanding this fact, the Court treats the motion as one made pursuant to this Federal Rule of Bankruptcy Procedure.

**5.** Other than a generic recitation of issues, the only substantive legal discussion contained in Section II of the Defendant's Motion for Stay Pending Appeal, which addresses Defendant's contentions regarding the appeal's likelihood of success, is a discussion of the use of parol evidence in contract interpretation under

The Court can only divine under these circumstances that Ms. Howard is relying upon her submissions in support of her opposition to the Trustee's summary judgment motion as proof that Ms. Howard has a likelihood of success on appeal. However, the arguments of Ms. Howard were previously rejected by the Court in its December 1, 2009 bench ruling and in its December 10, 2009 *Memorandum Opinion.* As such, Ms. Howard has not demonstrated that her appeal has any likelihood of success.

Even if this Court were to consider the alleged "errors" cited by Ms. Howard, the Court is not convinced that the Defendant has sustained her burden of persuasion.

By way of example, the Defendant asserts this Court erred by concluding that the Debtor's interest in the Mineral Rights was not effectively transferred to Ms. Howard as a result of the "1990 Agreement" (*See* Dkt. # 61, p. 3, ¶ 1, A.). The Defendant, however, repeatedly admits on the record that the "1990 Agreement" was executed in Florida, (*See* Dkt. # 52, Exhibit G at p. 11, lines 1–22), and was not recorded until after the Debtor com-

menced this bankruptcy case, which is more than eighteen years after the date the "1990 Agreement" was executed. (*See* Dkt. # 52, Exhibit F *and* Dkt. # 52, Exhibit G at pp. 6–7; p. 43, lines 13–20; p. 51, lines 18–25). Given these circumstances, the Trustee clearly maintains a superior interest in the real property to that of the Defendant because the Defendant's interest is void by operation of applicable law, including 11. U.S.C. § 362(a), 11 U.S.C. § 549, and 11 U.S.C. § 544 (which gives the Trustee rights under 21 P.S. §§ 351, 356 and 445).[6]

The Defendant insists this Court erred by failing to recognize her status as an alleged "tenant in common" with the Debtor, (*See* Dkt. # 61, p. 3, ¶ 1. C), and her alleged entitlement to an "undivided one half interest" in the Mineral Rights. (*See* Dkt. # 61, p. 3, ¶ 1, D). The alleged basis for her purported status as a "tenant in common" rests on the assumption that the Debtor and Defendant owned the real property at issue as "tenants by entireties" prior to their divorce.[7] This assumption is not supported by the record.

Pennsylvania law. *See* Motion for Stay Pending Appeal at pp. 5–9. As set forth more fully in the body of this *Memorandum Opinion,* the Defendant's reliance on parol evidence misses the mark.

**6.** The Court would note that the Defendant complains of the fact that the Court accepted the results of the Trustee's title search with respect to the real property located in Greene County, Pennsylvania—which reflects that no deed naming the Defendant as grantee was ever recorded in the filing offices in Greene County prior to the commencement of the Debtor's bankruptcy case. This complaint by the Defendant is a red herring because in these proceedings, the Defendant never produced a deed recorded in her favor prior to the commencement of this bankruptcy case (as discussed *infra*). In addition, copies of the post 1984 deeds relied upon by the Court are annexed to the Trustee's papers in sup-

port of her request for summary judgment. In addition, the Defendant has never articulated a meaningful challenge to the Trustee's title search—except to assert that the unrecorded "1990 Agreement" is in existence. Of course, applicable law provides that the Trustee's interest in the real property is superior to the Defendant's claimed interest because the Defendant failed to record her alleged interest prior to the commencement of the bankruptcy. *See e.g. In re J.H. Inv. Services, Inc.,* 418 B.R. 413, 425 (M.D.Fla.2009)(bankruptcy trustee's interest was superior to unrecorded interest asserted by non-debtor third party); *see also In re Eiland,* 260 B.R. 301, 304–305 (Bankr.M.D.Fla.2000)(pre-petition unrecorded transfer of debtor's interest in real property to ex-spouse is avoided).

**7.** And that upon divorce, the entireties interest was converted into a tenancy in common.

In her *Brief in Support of Motion for Summary Judgment,* the Defendant contends that title to the relevant parcels was conveyed to her and John W. Howard by way of two different deeds: one dated April 5, 1984 [8] and another dated December 29, 1989. (*See* Dkt. # 27, p. 4, ¶ 5.) Neither of those deeds, however, convey a property interest to Victoria Howard. As to the 1984 deed, the Defendant has never disputed the fact that the grantees were John W. Howard and his spouse at that time, Peggy J. Howard. Victoria Howard is not even a party to the transaction. Indeed, Victoria Howard and John W. Howard were not married at the time of the 1984 deed, having not been married until December 1987. As to the deed dated December 29, 1989, the real property was conveyed by the Debtor, John W. Howard, and his former wife, Peggy J. Howard, to the Debtor *alone.* (*See* Dkt. # 31, Exhibit E).[9] And, as set forth in this Court's prior *Memorandum Opinion* dated December 10, 2009, these circumstances do not support Ms. Howard claim of an alleged entireties interest in the subject property.

It is worth noting that the Court recognizes that there is a deed dated January 4, 1996 which sets forth the name of Victoria Howard, along with John Howard, as grantors. (*See* Dkt. # 31, Exhibit F.). This deed purports to convey to another third-party the surface rights of the property that is now the subject of the Oil and Gas Lease.[10] But, Victoria Howard is not named as a grantee in the instrument. Thus, this deed conveys nothing to her.

The 1996 deed also purports to retain or except the underlying oil and gas rights. No meaningful argument was made by the Defendant at the summary judgment hearing before this Court that the 1996 conveyance (or the reservation of rights made therein) was sufficient to convey some sort of ownership rights in Victoria Howard's favor when she previously owned no rights in the same. Indeed, as a general matter, a grantor who is a "stranger" to title cannot gain an interest in the reserved and/or excepted property where

---

8. Defendant mistakenly refers to the deed as having been entered in 1983.

9. Aside from a conclusory allegation, the Defendant has offered no meaningful evidence supporting her claim that the 1984 deed and the 1989 deed conveyed an entireties interest in the Mineral Rights to her. Of course, the time for the Defendant to come forward with evidence in this regard was at the summary judgment stage of these proceedings. *See Berckeley Inv. Group, Ltd. v. Colkitt,* 455 F.3d 195, 201 (3d Cir.2006)(noting that summary judgment is essentially "put up or shut up time"). In any event, under Pennsylvania law no presumption of an entireties interest in property arises simply because property is conveyed to one member of a married couple. *See In re Grubbs,* 113 B.R. 201, 202 (Bankr. W.D.Pa.1990). Further, in Pennsylvania the creation of an "entireties" interest in property requires the four unities of time, title, interest and possession. *Madden v. Gosztonyi Savings & Trust Co.,* 331 Pa. 476, 200 A. 624, 627 (Pa.1938). In order for the unity of title to exist, the conveyance must have featured the names of both the husband and wife. *See In re DelCorso,* 382 B.R. 240, 252 (Bankr. E.D.Pa.2007) (citing *Fenderson v. Fenderson,* 454 Pa.Super. 412, 685 A. 600, 607 (1996), *appeal denied,* 548 Pa. 670, 698 A.2d 594 (1997)). As the deed at issue was executed in favor of John W. Howard only, no unity of title existed in favor of John W. Howard and Victoria M. Howard; and the undisputed record in this case reflects that no entireties interest ever existed between the Debtor and Defendant.

10. As set forth in the Court's prior *Memorandum Opinion,* during the pendency of this bankruptcy case the Defendant unilaterally and without authorization of the Court took control of the Mineral Rights by subjecting them to an Oil and Gas Lease on August 12, 2008 and then quit claiming them to herself on August 25, 2008.

none previously existed. *See e.g. Nicoletti v. County of Allegheny (In re Condemnation by the County of Allegheny of Certain Coal, Oil, Gas, Limestone and Mineral Rights)*, 719 A.2d 1 (Pa.Cmmwlth.1998); [11] *see also Leidig v. Hoopes*, 288 P.2d 402 (Ok.1955)(wife acquired no title to realty where she had no title but joined with husband, who solely owned the property, in conveyance of the property with reservation of mineral rights to grantors).

The record further indicates that Ms. Howard has not suggested, and does not argue, that the 1996 deed obviates the Trustee's power to avoid the "1990 Agreement" pursuant to 11 U.S.C. § 544. Even had Ms. Howard done so, this argument is without merit.

■ Sections 544(a)(1) and (a)(2) of the Bankruptcy Code bestows upon a bankruptcy trustee the rights and powers of both a judicial lien creditor and an execution creditor under applicable non-bankruptcy law. *See* 11 U.S.C. §§ 544(a)(1) and (a)(2). As a result, the Trustee has the power to avoid the "1990 Agreement" pursuant to 21 P.S. § 445—which provides that in instances where a conveyance is executed outside of the Commonwealth of Pennsylvania and not recorded within six (6) months, the alleged "conveyance shall be adjudged fraudulent and void . . . against any creditor of the bargainor, or grantor. . . ." Nothing in 21 P.S. § 445 precludes this statute's enforcement when the putative creditor has constructive knowledge or notice of any claimed interest in property. Because the alleged "1990 Agreement" was executed outside of Pennsylvania and not timely recorded, and be-

cause the protection of 21 P.S. § 445 extends to creditors without regard to any constructive knowledge that may be imputed to them, the 1996 deed in no way operates as a shield to protect Ms. Howard from the avoidance powers of the Trustee.

Ms. Howard also takes issue with the Court's finding that even if the Defendant had an interest in the Mineral Rights, she ceded them when she executed the 1998 *Property and Settlement Agreement.* The Defendant suggests in this regard that the *Property and Settlement Agreement* is ambiguous, and that extrinsic evidence should have been considered by the Court to construe the document.

However, the language of the *Property and Settlement Agreement* is plain, clear and unequivocal on its face. It provides that " . . . [a]ll of Victoria Maria Howard's interest in real estate holdings . . . " were to be conveyed to the Debtor, excluding only Ms. Howard's interest in " . . . the Florida home in Boca Raton, Florida. . . ." (*See* Dkt. # 31, Exhibit K, ¶ TWELFTH).

■ With the agreement being plain and unambiguous on its face, it would have been inappropriate for the Court to consider extrinsic evidence to alter or vary the terms of the contract. Indeed, the Third Circuit Court of Appeals has held that courts must refrain from utilizing extrinsic evidence to create ambiguities in a contract where none exist in the first place. *See e.g., J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363 (3d Cir.2004); *International Union, United Auto., Aerospace & Agric. Implement Workers of America,*

---

11. *But see Alexa v. Alexa*, 23 Pa. D. & C.3d 164 (Pa.Com.Pl.1982)(dicta). The Court would note that the Defendant has neither suggested nor argued that, in connection with the 1996 deed, Ms. Howard released any prior inchoate rights under the Pennsylvania Probate, Estates and Fiduciary Code. This

Court is therefore unpersuaded that the dicta contained in *Alexa v. Alexa*, 23 Pa. D. & C.3d at 168, applies. This Court would also note that it has found no Pennsylvania appellate decision adopting or following the dicta contained in *Alexa.*

*U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 146 (3d Cir.1999).

The Defendant does argue that the so-called "prolix deed" recorded by the parties in connection with the *Property and Settlement Agreement* fails to mention the Mineral Rights at issue. The Defendant contends that this fact somehow proves that Ms. Howard has proper ownership of the Mineral Rights. The Defendant's argument, however, is not persuasive because at no time did Ms. Howard acquire a legally recognizable interest in the Mineral Rights in the first place. The record reflects that neither the 1984 deed nor the 1989 deed conveyed any interest to Ms. Howard. In addition, the alleged "1990 Agreement" is void and the 1996 deed itself does not operate as a conveyance of the Mineral Rights to her. Furthermore, the 1998 *Property and Settlement Agreement* does not convey the Mineral Rights to Victoria Howard. In fact, when Victoria Howard executed the *Property and Settlement Agreement,* she waived whatever remaining equitable distribution rights she may have had with respect to the same. (*See* Dkt. # 31, Exhibit K, ¶ EIGHTEENTH)(where Victoria Howard remised, released and forever discharged John Howard from "any and all actions, suits, debts, claims, demands and obligations whatsoever, both in law or in equity, ... it being the intention of the parties ... that there shall be, as between them, only such rights and obligations as are specifically provided in this agreement"). With Victoria Howard not ever acquiring a recognizable interest in the Mineral Rights, the fact that the "prolix deed" is silent does not change the outcome of this case. The fact remains that the undisputed record reflects that John Howard had, at all times germane hereto, owned the Mineral Rights at issue. And, when John Howard filed this bankruptcy case and the Trustee was appointed by the Court, the Trustee succeeded to John Howard's rights by operation of 11 U.S.C. §§ 541(a) and 704(a).

The Defendant also contends this Court erred by making "a variety of rulings, *sua sponte,* even thought [sic] the issues were not embraced by the parties' pending cross-motions for summary judgment ..." (*See* Dkt. # 70, ¶ 15). In particular the Defendant takes issue with the Court's findings that: (a) the Defendant is liable for proceeds of the Mineral Rights that she has dissipated; (b) the Defendant has committed a willful violation of the automatic stay; and (c) the Defendant is liable for damages for violation of the automatic stay.

Contrary to the Defendant's insistence, the rulings of this Court were not made *sua sponte;* the rulings were the result of issues raised by the Trustee in the motions before the Court. *See e.g. Trustee's Response to Defendant's Motion for Summary Judgment or Partial Summary Judgment and Cross–Motion for Summary Judgment* (Dkt. # 30, ¶ 14 and at Section D) (where the Trustee, among other things, requested that the Defendant account for all Mineral Rights' proceeds and pay the sums over to the Trustee and requested that the Defendant pay damages for violation of 11 U.S.C. § 362); *see also Trustee's Memorandum of Law* (Dkt. # 31 at pp. 15 and 16) (where the Trustee alleged that the conduct of Defendant violated the automatic stay and requested that the Defendant be compelled to return the transferred property, any profits therefrom, and punitive damages); *see also Trustee's Expedited Motion for Order Requiring Defendant to Escrow Disputed Funds* (Dkt. # 48 at pp. 3–6) (identifying instances where in the record the Defendant admitted to dissipating funds).

Not only were the issues discussed by the Court raised by the Trustee in this

matter,[12] the Court's findings are supported by both the record made in this case and by applicable law.

The undisputed record in this case is that the Trustee requested an accounting and turnover of proceeds from the Oil and Gas Lease. (*See* Dkt. # 30, ¶ 14 and Section D; Dkt. # 31, p. 17). In addition, the Defendant has admitted several times, both directly and through counsel, that she has dissipated at least $129,000 of the assets of the bankruptcy estate and admits her intent to continue doing so. (*See* Dkt. # s 34, 42, 46 and Dkt. # 48, pp. 3–7, Dkt. # 52, Exhibit G, p. 61, lines 14–25; pg. 62, lines 1–18); *see also* (Audio Recording of Hearing Held 12/22/2009 11:50 AM—11:53 AM and 12:00:00 PM—12:02 PM).

Because 11 U.S.C. § 550 clearly permits the Trustee to recover transfers avoided under applicable law, and because this statute also permits the Trustee to recover the value of such property improperly transferred to (and dissipated by) Ms. Howard, it is clear that the turnover order and judgment for liability against the Defendant is warranted. *See Feltman v. Warmus (In re American Way Serv. Corp.),* 229 B.R. 496, 530–31 (Bankr. S.D.Fla.1999).

With respect to the Defendant's liability for damages resulting from the Defendant's violation of the automatic stay, Ms. Howard insists that it was improper for this Court to find that Ms. Howard's actions were "willful" for purposes of 11 U.S.C. § 362(k). (*See* Dkt. # 61, p. 4, ¶ 2, A and D). In her papers, the Defendant has not really articulated why she makes such an assertion.

■ To satisfy the willfulness requirement of 11 U.S.C. § 362(k), applicable law provides that a "willful" violation of the stay does not mean a party must intend to violate the automatic stay. Rather, all that applicable law requires is that the act which violates the stay must be intentional. *In re Wingard,* 382 B.R. 892, 901 (Bankr. W.D.Pa.2008) (citing *In re Lansdale Family Restaurants, Inc.,* 977 F.2d 826, 829 (3d Cir.1992)). Courts have also consistently held that "whether a party believes in good faith that it had a right to the property [at issue] is not relevant to whether the act was willful or whether compensation must be awarded." *Weisberger v. United States, IRS (In re Weisberger),* 205 B.R. 727, 731 (Bankr.M.D.Pa. 1997) (citing *In re University Medical Center,* 973 F.2d 1065, 1088 (3d Cir.1992)); *see also In re Chesnut,* 422 F.3d 298, 304 (5th Cir.2005); *In re Levenstein,* 371 B.R. 45, 48 (Bankr.S.D.N.Y.2007).

With these standards in mind, the undisputed record supports the conclusion that Ms. Howard has willfully violated the automatic stay because such record reflects that Ms. Howard intentionally caused the subject real property to be quit claimed to herself after the bankruptcy case was filed;[13] and Ms. Howard did so after she

12. Even if such issues were not raised by the Trustee, the Court certainly is not required to turn a blind eye to a willful violation of the automatic stay. Indeed, 11 U.S.C. § 105(a) provides, in pertinent part, that:

The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making a determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

13. 11 U.S.C. § 362(a)(3) provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of ... any act to obtain ... property from the estate or to exercise control over property of the estate ..."

had filed a proof of claim against the estate. (*See* Claim # 5, Case No. 08–22224JAD; *See* Dkt. # 31, Exhibit A *and* Dkt. # 52, Exhibit G, pp. 6–7; p. 39, lines 20–22; p. 43, lines 9–25). Thus, when the quit claim deed was recorded, Ms. Howard had actual knowledge of the pendency of the case and the imposition of the automatic stay. In addition, when Ms. Howard leased the subject property and then retained (and expended some of) the income stream derived from it, Ms. Howard also did so with knowledge of the pendency of the case and the imposition of the automatic stay.[14] *Id.* These facts support the finding of a willful violation of the automatic stay on the part of Ms. Howard. To date, the Defendant has not submitted anything into the record indicating otherwise.

Given the entire record of this case, it is this Court's view that the Defendant has not raised a serious or substantial doubt as to the merits of both the Court's bench order of December 1, 2009 and its *Memorandum Opinion and Order* of December 10, 2009. Under these circumstances, the Defendant has not demonstrated a likelihood of success on appeal.

### B. Irreparable Injury to the Defendant

The Defendant also insists that she will be irreparably harmed if this Court's Order is not stayed because the Mineral Rights proceeds "have been her sole means of support and only source of income since the cessation of her permanent alimony payments." (*See* Dkt. # 70, ¶ 11). Consequently, the Defendant argues that "she will no longer be capable of maintaining her mortgage." (*See id.* at ¶ 12). In reviewing these allegations, the Court is not persuaded by the Defendant's claims of irreparable injury.

Under applicable law, the fact that the Defendant's turnover of the property of the estate will impact her financially is not in and of itself sufficient to constitute "irreparable harm." *See Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir.2004) ("Irreparable harm must be of a peculiar nature, so that compensation in money alone cannot atone for it.") (quoting *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir.1998)); *see also Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.") (quoting *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921 (D.C.Cir.1958)).

Further, from the state of the record it appears to this Court that Ms. Howard's assertion that she will "no longer be capable of maintaining her mortgage" is dubious at best because Ms. Howard admitted at a prior deposition that her residence is not encumbered by a mortgage. (*See* Dkt. # 52, Exhibit G, p. 62, lines 19–20).[15]

In addition, at the hearing on the Motion for Stay, counsel for the Defendant did not

---

14. Debtor John W. Howard filed his voluntary petition on April 4, 2008. Defendant filed her proof of claim on May 25, 2008. Defendant entered into the Oil & Gas Lease on August 12, 2008 and filed a quit claim deed on August 25, 2008. (*See* Doc. # 31, Exhibits A and B).

15. The inaccuracy of the Defendant's allegation was brought to light at the December 22, 2009 hearing on the Motion for Stay Pending Appeal. Interestingly, on January 5, 2010, the Defendant filed a *Motion to Clarify Victoria Howard's Motion to Stay and Victoria Howard's Response to the Trustee's Motion for Contempt and/or Sanctions* asserting that the mortgage argument was a misstatement. This Motion is denied as moot because the misrepresentation by the Defendant was already exposed by the Trustee at the December 22 hearing.

explain why the Defendant was not employed and counsel did not dispute that the Defendant was an able person in decent health.[16]

The Court would also note that once the Mineral Rights proceeds are returned to the Trustee, the Trustee is precluded from distributing the same to creditors absent an order of this Court. In this regard, a mechanism is in place to protect the *status quo* during the pendency of the appeal. This fact also militates against Ms. Howard's claim of irreparable injury because the Defendant will have notice and an opportunity to object to any effort by the Trustee to further liquidate the Mineral Rights and/or distribute the Mineral Rights proceeds to the creditors of this estate.

For all of these reasons, the Court is not convinced that the absence of a stay will result in irreparable injury to the Defendant.

### C. Harm to Other Parties in the Litigation

The Defendant also insists there will be no substantial harm to other parties if a stay is issued. This allegation rings hollow based on the state of the record.

The undisputed record is that if a stay pending appeal were to be ordered, the Defendant has not offered anything to preserve the *status quo*. It is undisputed

that the Defendant has posted no bond to protect the bankruptcy estate during the pendency of any appeal, and it is also undisputed that the Defendant desires to continue to spend the Mineral Rights proceeds during the pendency of her appeal. Certainly, these facts reflect that the bankruptcy estate, and its creditors, will be harmed if a stay of the Court's orders were to be issued. *See In re Babco, Inc.,* 25 B.R. 325, 327–328 (W.D.Pa.1982)(finding that where bankruptcy estate may lose a major asset of the estate, the estate is irreparably harmed).

### D. The Public Interest

Finally, the Defendant insists that no harm to the public interest will result if a stay pending appeal is ordered. This Court disagrees.

Contrary to the allegations of the Defendant, the public interest is served by not granting the Defendant a stay pending appeal because to do so would run counter to the statutory injunction (called the automatic stay) found at 11 U.S.C. § 362(a).

The Third Circuit Court of Appeals has recognized the importance of the automatic stay in bankruptcy proceedings as promoting a significant public policy objective. *See ACandS, Inc. v. Travelers Cas. and Sur. Co.,* 435 F.3d 252, 258 (3d Cir.2006) (citing *In re Cavanaugh,* 271 B.R. 414, 424 (Bankr.D.Mass.2001)) ("[T]he automatic

---

**16.** After the hearing on the *Motion for Stay Pending Appeal,* the Defendant filed her *Motion to Clarify* and asserted that she would be harmed absent a stay because she is not in a position to pay counsel his fees. As a result, the Defendant argues that she will be left without counsel. The Court is not persuaded by this argument. Again, the Defendant has not explained why she cannot earn a living independently of the Mineral Rights. The Defendant also has not filed with the Court a list of all assets and liabilities reflecting her true economic status. Moreover, the Defendant has belatedly acknowledged that her home in

Boca Raton, Florida is unencumbered. In addition, the Court would note that counsel for the Defendant is not necessarily free to discontinue his representation of the Defendant in a willy-nilly fashion. Withdrawal as counsel would require a proper application with this Court and compliance with applicable rules of professional conduct. The rules of professional conduct provide, among other things, that a lawyer may not withdraw from a representation if the withdrawal cannot be accomplished without a material adverse effect on the interests of the client. *See* Pa. R.P.C. 1.16.

stay is the single most important protection afforded to debtors by the Bankruptcy Code.").

That public policy objective is to protect the bankruptcy estate from unilateral dismemberment by recalcitrant creditors or other parties. *N.L.R.B. v. Martin Arsham Sewing, Co.,* 873 F.2d 884, 887 (6th Cir.1989)(citing H.R.Rep. No. 595, 95th Cong., 2d Sess. 178, *reprinted in,* 1978 U.S.C.C.A.N. 5787, 5963, 6138); *see also In re Pintlar Corp.,* 124 F.3d 1310, 1313 (9th Cir.1997) and *In re MortgageAmerica Corp.,* 714 F.2d 1266, 1275 (5th Cir.1983).

If this Court were to issue a stay of its turnover order, this Court would in essence be acquiescing the Defendant's continued violation of the automatic stay in bankruptcy. *Metromedia Fiber Network Servs. v. Lexent, Inc. (In re Metromedia Fiber Network, Inc.),* 290 B.R. 487, 490 (Bankr.S.D.N.Y.2003) (citing *In re Knaus,* 889 F.2d 773, 775 (8th Cir.1989))(holding that a refusal to turn over property of a debtor's estate upon demand constitutes an improper exercise of control over the debtor's property within the scope of Section 362(a)(3)).

The Court further notes that there is "a strong public interest in the swift and efficient resolution of bankruptcy proceedings." *In re Adelphia Communications Corp.,* 361 B.R. 337, 367–68 (S.D.N.Y.2007) (citing *In re Savage & Assocs., P.C.,* No. 05 Civ. 2072, 2005 WL 488643, at *2 (S.D.N.Y. Feb. 28, 2005)). Imposing a stay pending appeal and permitting the Defendant to continue to dissipate assets of the estate does nothing but delay this bankruptcy case and foster further litigation (as the Trustee would have to commence further proceedings to try and recoup the funds that Ms. Howard would like to dissipate). Indeed, courts have found there is a strong public interest in the preservation of a debtor's assets for the purpose of paying creditors, rather than pursuing the litigation of claims. *See In re Metiom, Inc.,* 318 B.R. 263, 272 (S.D.N.Y. 2004) (The District Court found that there was a public interest in preserving the assets of the bankruptcy estate to pay creditors when denying a stay of the bankruptcy court's order for examination pursuant to Rule 2004).

As such, for the reasons set forth above, strong public policy interests favor a denial of the Defendant's Motion for Stay Pending Appeal.

**E. Result**

In summary, the Court is not convinced that a stay of this Court's orders of December 1, 2009 and December 10, 2009 is appropriate. The Defendant's claims of irreparable injury if no stay is granted are not persuasive. The record and applicable law also reflect (a) that the Defendant's appeal does not have a likelihood of success, (b) that the issuance of a stay pending appeal will actually cause harm to the bankruptcy estate and its creditors, and (c) that the issuance of a stay pending appeal does not foster the public interest. For these reasons, an order will be entered which denies the Defendant's Motion for Stay Pending Appeal.

**III. *The Motion to Compel***

With respect to the Trustee's Motion to Compel, Ms. Howard argues that the Trustee's motion should be denied as premature. In support of her argument, Ms. Howard points to Fed.R.Civ.P. 62 as incorporated by Fed.R.Bankr.P. 7062.

Fed.R.Civ.P. 62(a) states generally that "no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 14 days have passed after its en-

try." [17] Given this language in the rule, it appears that the Trustee's Motion to Compel was arguably premature when filed— as the Court's bench order was issued on December 1, 2009, its *Memorandum Opinion and Order* was entered on the docket on December 10, 2009, and the Trustee's Motion to Compel was filed December 16, 2009. Appearances, however, can be misleading.

As an initial matter, the Court notes that as of the date of this *Memorandum Opinion* and related order, the fourteen (14) day stay of Fed.R.Bankr.P. 7062(a) has expired. Thus, there should be no reason for Ms. Howard to delay turning over the Mineral Rights and its proceeds to the Trustee.

Secondly, upon closer inspection, it appears that the Defendant's timeliness argument is nothing but a red herring. Fed.R.Civ.P. 62(a)(1) expressly carves out from its application any "interlocutory or final judgment in an action for an injunction . . ." In such proceedings, the fourteen (14) day stay of Fed.R.Civ.P. 62(a) does not apply. Rather, the only avenue for a stay of enforcement proceedings with respect to an injunction would be by way of the discretionary stay as provided for in Fed.R.Bankr.P. 8005 and Fed.R.Civ.P. 62(c).[18] But, no stay of the Court's orders has been obtained.

■ This Court concludes that this matter falls within the injunction exception enumerated in Fed.R.Civ.P. 62(a). The Court reaches this conclusion because the Trustee's lawsuit included the request for the enforcement of the statutory injunction of the bankruptcy automatic stay found at 11 U.S.C. § 362(a); and this Court's two orders in essence directed that the Defendant comply with the automatic stay by requiring that the Defendant turnover property of the estate. As a result, Ms. Howard's duty to comply with both this Court's orders and the bankruptcy stay is in no manner delayed by way of application of Fed.R.Civ.P. 62(a).

This Court further holds that neither Fed.R.Civ.P. 62(a) nor Fed.R.Bankr.P. 7062(a) supersedes the application of 11 U.S.C. § 362(a). The fact remains that once a bankruptcy petition is filed, and except in very narrow circumstances that are not applicable to this case, there are no pre-conditions as to when the automatic stay is triggered. *See* 11 U.S.C. § 362(a); *see also ACandS*, 435 F.3d at 259. In this regard, the imposition of the automatic stay is automatic and persons or parties acting in violation of the bankruptcy automatic stay due so at their own peril.

■ Under applicable law, the refusal to turn over the legal and equitable interests of the debtor to the trustee upon demand constitutes an "exercise of control" over property of the estate within the scope of Section 362(a)(3). *Metromedia Fiber Network*, 290 B.R. at 490 (citing *In re Knaus*, 889 F.2d 773, 775 (8th Cir. 1989)). Courts have also held that a bankruptcy stay violation occurs when the property interests at issue are just "arguably" property of the bankruptcy estate. *In re Chesnut*, 422 F.3d 298, 303–304 (5th Cir.2005); *see also In re Levenstein*, 371 B.R. 45, 48 (Bankr.S.D.N.Y.2007).

As the Court in *Levenstein* held:

---

17. The Defendant mistakenly contends that the stay provided in Fed.R.Civ.P. 62(a) is ten (10) days. However, the rule was recently modified to provide that the stay under Fed.R.Civ.P. 62(a) is for a limited duration of fourteen (14) days.

18. For purposes of clarity, the Court reiterates that the Defendant has not posted a supersedeas bond, and therefore Fed.R.Civ.P. 62(d) does not apply.

Where the debtor claims an interest in property, the secured creditor may not make its own, unilateral determination of property rights after the debtor has invoked the jurisdiction of the Bankruptcy Court and with it the protection of the automatic stay. It is for the Bankruptcy Court, not the secured creditor, to determine whether the debtor has a sufficient interest in property to implicate the automatic stay, even if the debtor's claimed interest in property may turn out to be groundless. The secured creditor can protect its interest in the Bankruptcy Court by the simple expedient of a motion for relief from the automatic stay or other appropriate relief. *In re Levenstein*, 371 B.R. at 47.

Of course, in the matter *sub judice*, the estate's interests were not groundless. The Court found that the Trustee's interests have merit. Nonetheless, the Defendant failed to adhere to the bankruptcy automatic stay and took matters into her own hands and continues to do so to this day. Under these circumstances, the Court will grant the Motion to Compel by entering an order which, again, directs that the Defendant shall immediately (i.e., without haste) turnover all property of the estate to the Trustee.

## IV. *Conclusion*

For all of the reasons set forth above, the Court finds that both the Motion for Stay Pending Appeal and the Motion to Clarify are without merit. The Court also finds ample cause to grant the Trustee's Motion to Compel. An appropriate order will be entered.

## *ORDER*

The matters before the Court are the Trustee's *Motion to Compel Compliance With December 1 and 10, 2009 Orders of Court and for Contempt and Sanctions* (the "Motion to Compel") and the Defendant's *Motion for Stay of Orders Pending Appeal* (the "Motion for Stay Pending Appeal"). Also before the Court is the Defendant's *Motion to Clarify Victoria Howard's Motion to Stay and Victoria Howard's Response to the Trustee's Motion for Contempt and/or Sanctions* (the "Motion to Clarify")

AND NOW, this 15th day of January, 2010, and for the reasons expressed in the accompanying *Memorandum Opinion*, the Court hereby ORDERS, ADJUDGES and DECREES that:

1. The Defendant's Motion to Clarify is DENIED as moot.

2. The Defendant's Motion for Stay Pending Appeal is DENIED.

3. The Trustee's Motion to Compel is GRANTED and the Defendant, Victoria M. Howard, is directed to immediately (i.e., without haste) comply with the Court's prior orders of December 1, 2009 and December 10, 2009.

4. By no later than January 22, 2010, the Defendant shall file with the Court an affidavit of compliance with respect to the Court's orders.

5. Nothing contained herein should be deemed to preclude the Court from issuing any further orders, process, or judgment that is necessary or appropriate to enforce or implement the Court's orders, rules, or the provisions of title 11 of the United States Code.