# Risk's Appeal.

1. A bequest of certain specific personalty to testator's widow, followed by the words " all the personal property is hers," there being no provision in the will for the payment of debts, but devises to the widow and others of the realty, constitutes a general legacy to the widow of all the personal property after the payment of debts.

2. A testator bequeathed to his widow " all bonds and all the income thereof and all money now on hand and all the personal property" and then devised his real estate as follows: One half to his widow, one quarter to his brother, and out of the remaining quarter he gave two legacies and the remainder, if any, he directed to be equally divided between his brother and widow. No provision was made for the payment of debts:

   *Held*, that the legacy to the widow was general and not specific and that there was nothing in the will from which an intention to relieve the personal property from the payment of debts could be inferred.

3. In the above case the widow, after she had elected to take her $300 exemption out of the real estate and the appraisers had reported that this could not be done without injury to the balance, applied to the Orphans' Court for an order to sell for the payment of debts the one quarter of

the realty, that was charged with the legacies. At the audit she claimed that the debts (constituting a very small item), the expenses of settling the estate and the widow's exemption should all be paid out of the funds realized from this sale which was sufficient to pay the legacies charged upon it and leave a balance. The auditor reported that this fund should be charged with one fourth of these expenses. Upon an appeal by the widow from a decree confirming this report, *Held* ·

(1). That the court having relieved her bequests of personal property from the payment of expenses and debts and divided the burden between her and testator's brother by charging the real estate with such payment, she had no cause of complaint.

(2). That under such circumstances the rule that the widow is a favorite and takes as a purchaser, had no application.

4. Walker's Estate, 3 Rawle, 229, followed; McGlaughlin v. McGlaughlin, 12 Harris, 20, and Reed v. Reed, 9 Watts, 265, distinguished.

May 18, 1885. Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and CLARK, JJ. · PAXSON and STERRETT, JJ., absent.

APPEAL from the Orphans' Court of *Lancaster County* : Of July Term, 1884, No. 105.

This was an appeal by Mary E. Risk, from a decree of said court, overruling her exceptions to and confirming the report of an auditor appointed to distribute a fund in the hands of said Mary E. Risk, as executrix of her deceased husband, James Risk, being the proceeds of real estate sold for the payment of debts, by an order of the Orphans' Court.

The facts were as follows : James Risk, the testator, died November 9th, 1881, leaving to survive him a widow but no issue. The following is a copy of his last will and testament :

" MOUNT PLEASANT, LANCASTER CO., PENNSYLVANIA.

November the fifth day 1881. This is My Last Request of My Estate: Fore My Wife Mary E. Risk to have all Bonds and all the income thereof and all money now on hand & all the Personal Property is hers the Remaining Real Estate is to Go to Mary E. Risk one haff. Brother William Risk is to have one haff of the Remaining haff of the Real Estate. Samuel J. Risk is to have one thousand Dollars of the Remaining haff. Robard B. Risk is to have one hundred Dollars of the Remaining haff. If there is anny Balans Lef it is to Bee Equally Divided Between Samuel J. Risk and Mary E. Risk. I wish My wife to Mary E. Risk to Bee the Executor of My Estate.

Sined by me

HIS

JAMES + RISK.

MARK.

Witnesses present. { SAMUEL SHIMP, ROBT. FERGUSON, W. G. CAIRNSS."

This will was admitted to probate November 18th, 1881, and letters testamentary were granted to Mary E. Risk. The inventory, as filed, showed personalty to the amount of $3,189. On November 30th the widow elected to take under the will and also elected to retain property to the value of $300 out of the real estate. On December 7th, 1881, the appraisers, appointed to value and set aside real estate to the value of $300, reported that this could not be done without injury to the whole real estate.

On December 12th, 1881, upon petition of Mary E. Risk, the Orphans' Court granted an order for the sale of the undivided one fourth of the decedent's real estate for the payment of debts. Mary E. Risk and William Risk, as devisees under the will, advertised that at the same time the remaining three fourths of said real estate would be sold. The whole property was sold on January 5th, 1882, and realized $7,040.39. On January 16th, 1882, the executrix made return that she had sold the undivided one fourth for $1,760.09¾.

Before the Auditor (A. C. Reinoehl, Esq.,) appointed to distribute said fund, counsel for the widow contended that this was the proper fund out of which the debts, expenses of settling up the estate and the widow's $300 must be paid. The Auditor found that the debts contracted by decedent amounted to less than $100, this sum added to the expenses of settling the estate and the widow's exemption made the liabilities amount to $1,172.83, one fourth of which he charged upon the fund in his hands.

To this report, the widow filed, *inter alia*, the following exceptions:

"7. The Auditor should have decided that the personal property, and the one half of the real estate bequeathed and devised absolutely to Mary E. Risk, the widow, should not bear any part of the expenses of settling the estate, the payment of debts of the testator, or widow's exemption."

"8. The Auditor erred in not awarding $300.00 to the widow out of the proceeds of the sale of the real estate mentioned in the account."

These exceptions were dismissed by the court, PATTERSON, J.; the report was confirmed and a decree entered making distribution in accordance therewith. The widow thereupon took this appeal, assigning for error this action of the court.

*A. J. Eberly*, for appellant.—It is very manifest that the intention of the testator in the present case is, that his widow should be well provided for out of his estate, and that was his first thought when he made his will; and whatever was given to her, both the legacy and devise were so given as to be

without any abatement for the payment of debts and other expenses.

The bequest of " all bonds and all the income thereof, and all money now on hand, and all the personal property is hers," is a specific legacy, and not liable to any abatement for the payment of debts or legacies. See McGlaughlin's Executors *v.* McGlaughlin's Administrator, 12 Harris, 20.

The widow takes under the will as a purchaser and, accordingly, the legacy and devise to her were free of debts : Act of April 8th, 1813, § 11 , Isenhart *v.* Brown, 1 Edwards Ch., 411 ; Reed *v.* Reed, 9 Watts, 263 ; Lord *v.* Lord, 23 Conn., 327 ; Kennedy *v.* Nedrow, 1 Dallas, 418 ; Burridge *v.* Bradyl, 1 P. Wms., 127 ; Heath *v.* Dendy, 1 Russell, 543.

In the above cases the court proceeded on the ground that the relinquishment of the widow's right at law entitles her to the entire benefit of her legacy and devise, in exclusion of every one else. Such is distinctly the English rule in cases of expressly conditional bequests. See Reed *v.* Reed, 9 Watts, 265.

The widow is entitled to her exemption, exclusive of her share under the intestate law, Act April 14th, 1851, § 5 ; Compher *v.* Compher, 1 Casey, 31.

If land be claimed, and it cannot be set apart, as in this case, her claim, after final confirmation by the court, becomes a lien upon it, and may be collected by proceedings in the Orphans' Court, under Act of 17th of May, 1866 (Purdon's Digest, 1111, pl. 55). And when the land is sold, by judicial sale, as was done in the case under consideration, it is payable out of the fund.

*William Leaman*, for appellees.—That the testator makes no express provision for the payment of debts is indisputable. He disposes entirely of his personal and real estate without any direction respecting them. We are therefore remitted to the ordinary course of distribution prescribed by law. The legacy in this instance is general in its character, and there is nothing in the will before us showing an intention on the part of the testator to exempt his personal property from the payment of his debts. The present case is fully met and disposed of by decision in Walker's Estate, 3 Rawle, 229. In that case the testator devised to his wife certain real estate, and " also, all his household goods and furniture, moneys, bonds, mortgages, outstanding debts due and owing to him, and all other his personal estate of what nature or kind soever." It was held that the legatee had no right to claim an exemption of the personal assets on the ground that the bequest to her was specific, or that anything appeared showing an intention on

Out
the part of the testator to exempt his personal estate from the payment of debts. No question of abatement arises in this case, as in Reed *v.* Reed, 9 Watts, 263, cited by appellant.

The decedent's property, if legally distributed is sufficient to carry out his testamentary purposes and secure to the legatee and devisees their respective interests in full; for the testator's intention, under a proper construction of the will, is, that the widow should take the personal estate subject to the payment of his debts, and hence the Auditor erred in charging one fourth of the debts upon the fund he was distributing. The appellee, however, is satisfied with the distribution.

The Auditor was entirely right in directing that only one fourth of the $300 claimed by the widow out of the real estate should be paid out of the fund for distribution. The said fund is the proceeds of the sale of an undivided fourth of the real estate, and should be charged in that proportion with the said claim.

Mr. Justice GREEN delivered the opinion of the court, October 5th, 1885.

It seems to us this case is ruled by Walker's Est., 3 R., 229. The terms of the bequest to the widow are practically identical with the bequest to the widow in that case. The language of James Risk's will as to his personal estate is as follows: " Fore My Wife Mary E. Risk to have all Bonds and all the income thereof and all money now on hand and all the Personal Property is hers." Some of the personal property is mentioned, but that, and all other personal property are included under the general words, " all the Personal Property is hers." This is precisely what we held of the same kind of a bequest in Walker's Estate. Then having given all his personal estate to his widow he makes no provision whatever for the payment of his debts or the expenses of his funeral or the settlement of his estate. In the next place he disposes of all his real estate by giving one half of it to his widow, one quarter to his brother William, and out of the remaining quarter he gives one thousand dollars to Samuel J. Risk and one hundred dollars to Robert B. Risk. If there is anything left out of this one quarter it is to be equally divided between the widow and Samuel J. Risk. There is absolutely nothing in the will from which an intent can be derived to relieve his personal estate of its ordinary duty of paying debts and expenses, and we can discover no reason, therefore, for departing from our ruling in Walker's Estate, where we held that because no such intent was manifest the personal estate must first be applied to the payment of debts, and gave the remainder only to the widow. In the present case the legacies given

to the other legatees are far more specific than the legacy given to the widow. The latter is undoubtedly general and literally gives only what is left after debts and expenses are paid, all of which we expressly decided in Walker's Estate. But here the decedent's debts were but a trifle, less than $100. The remainder of the liabilities are all created after the testator's death. Some of these are the costs and expenses incurred in selling the real estate, commissions of the accountant, the $300 claimed by the widow out of the real estate, and $197.60 expenses of the audit. It is evident that the most of these items ought to be paid out of the real estate. The Auditor, however, has proceeded upon the idea of charging the real estate with all the debts and expenses, and as the fund for distribution represents the proceeds of one fourth of the real estate, he charges it with one fourth of the debts and expenses. We do not see what fault the widow can find with this. It is in her ease and not to her detriment that this is done. She is a devisee of one half the real estate, and as such her devise would be chargeable with one half of the liabilities which it belongs particularly to the real estate to discharge. But she is legatee of all the personal estate with no expressed or implied testamentary intent that the personal estate shall be relieved of its duty to discharge all debts, funeral expenses, medical charges and its proportion of the expenses of settlement. The Auditor and court below, however, have relieved her personal legacy from that burthen, and have divided it between herself and others as devisees of the real estate. Of this no one complains but the widow and she has no cause of complaint.

The rule that the widow is a favorite and takes as a purchaser and is to be preferred in certain contingencies is undoubtedly correct, but it has no application here. In McGlaughlin *v.* McGlaughlin, 12 Harr., 20, where it was applied, the legacy to the widow was specific, carrying the furniture and the personal chattels but not the securities and personal estate generally, and of course in such a case the latter are first applicable to the payment of debts and expenses. The case of Reed *v.* Reed, 9 Watts, 263, is equally inapplicable. No question of abatement for payment of debts arose. The widow and others were legatees of sums charged upon real estate and the proceeds of the real estate were not enough to pay all the legacies in full. We held that the widow was a preferred legatee as between herself and others of the same grade and must be paid in full first, and that whatever abatement was required must be suffered by the other legatees. Here the situation is entirely different. No abatement is required for payment of debts. The estate is amply sufficient for that purpose.

[Potts *v.* Dunlap.]

The legacy to the widow is not specific and no intent is expressed or can be implied that she shall take the whole of the personal estate divested of its liability for debts and expenses. But nevertheless it is practically given to her by a decision which puts all the debts and all the expenses upon the whole of the real estate. The case presents really only a question of the apportionment of debts and expenses between real and personal funds. There is no question of abatement of legacies as between each other. There is enough to pay all the legatees in full. The record exhibits only an effort by one legatee to increase her legacy, or devise rather, by imposing upon the other devisees a duty which does not belong to them, that is, a duty to pay certain charges which are properly payable out of the whole of the fund and not out of a part of it. The widow claims that one fourth of the real estate shall pay the whole of the charges. But there is nothing in the will indicative of such an intent, and as the charges are common to the whole of the real estate, in so far as they affect it at all, they are properly payable out of the whole and not out of a part exclusively. In so far as the debts and expenses, which are properly payable out of the personal estate, are imposed upon the real, the widow is favored by the decision of the court below and has no cause of complaint, and the other devisees make no complaint. In these circumstances there is nothing to justify a reversal of the decree of the court below.

Decree affirmed and appeal dismissed at the cost of the appellant.