Rzedzianowski's Estate.

Argued October 16, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, and HIRT, JJ.

*Robert Levin,* with him *Jos. Ginsburg,* for appellant.

*Edmund J. Bodziak,* for appellee.

OPINION BY STADTFELD, J., April 14, 1942:

This is an appeal from a decree of the Orphans' Court of Philadelphia County awarding a balance in the administrator's account of John Rzedzianowski, also known as Jan Rzedzianowski, deceased, to his next of kin.

The decedent died on November 1, 1937, unmarried and without issue, domiciled in Philadelphia, and letters of administration on his estate were granted by the Register of Wills of Philadelphia County on May

11, 1939. An account of the administrators was listed for audit in January, 1940, and at that time a continuance was granted, pending probate of a lost will and codicil of decedent. On January 29, 1941, the decedent's holographic last will and codicil in the Polish language were duly admitted to probate by the Register of Wills of Philadelphia County, together with a duly certified English translation thereof, and counsel representing all parties in interest entered into a stipulation providing that the letters of administration theretofore granted by the Register of Wills of Philadelphia County be revoked and that letters of administration c. t. a. be granted to the same persons who theretofore had been the administrators; that the account filed by the administrators be placed on the list for audit by the Orphans' Court of Philadelphia County; that at the audit of the said account, all parties in interest would join in a request to the orphans' court not to award the balance of the account to the administrators c. t. a., for further accounting, but to distribute the same to the beneficiary or beneficiaries entitled thereto under the testator's will, or otherwise, according to the law of Pennsylvania.

The provisions of the foregoing stipulation were carried out, original letters of administration revoked, and letters of administration c. t. a. were granted as stipulated. The account of the administrators was called up for audit by the orphans' court on February 6, 1941, before LADNER, J.

The moneys accounted for in said account consisted exclusively of money which the decedent had on deposit in the Philadelphia Savings Fund Society and a small deposit in the United States Postal Savings, and the accounts had evidently been opened by the decedent some time after the date of his last will and codicil.

After deducting costs of administration and the amount due a creditor of the decedent, the net balance for distribution was $2267.66.

This fund was claimed at the audit by the Polish Consul, representing the decedent's next of kin, a sister, nephews and nieces, all of whom were residents of Poland. Said fund was also claimed by the appellant, Anna Borkowska Paczosa, on the theory that there was no intestacy and that she was the sole legatee under the decedent's will and codicil.

The auditing judge, on April 4, 1941, filed an adjudication sustaining the claims of the Polish Consulate, representing the decedent's next of kin, and held that the appellant was not entitled to the said fund, on the ground that under the language of the testator's will and codicil, the same had not been bequeathed to her and that, therefore, there was an intestacy with respect to this portion of the decedent's estate. Exceptions were duly filed on behalf of the said Anna Borkowska Paczosa, in the lower court which were duly argued and dismissed by the court in banc. From this decision, the said Anna Paczosa prosecuted the present appeal.

The pertinent provisions of the decedent's will and codicil are as follows: In the preamble of the will, the testator sets forth that he is about to leave Poland for America and that considering the uncertainty of life and the perils of the journey, he has decided to dispose of his "modest means," according to his own will. Testator then sets forth that his brothers and sisters showed him a great deal of hostility and unfriendliness and that he became involved with them in expensive litigation and that he "absolutely denies his brothers and sisters any right or any claim whatsoever on their part to the inheritance of his property." Testator then sets forth that he is a bachelor and that he has no descendants and that therefore he leaves "all my modest property, consisting of fields and three lots" (which he describes) to his friend, colleague, companion of his youth and his then fiancee (naming the appellant), and then continues, "and apart from that" he leaves

to the said appellant certain enumerated shares of bank stock. There were no other dispositive words in the will. However, testator added a codicil to his will, which has likewise been duly admitted to probate. This codicil consisted solely of a request to the competent court authorities to deliver his "modest property", without any restricting or qualifying words whatsoever, to the interested party (naming the appellant) without difficulties and unnecessary expenses to her. The will bears date of May 30, 1925. The codicil is undated.

It appears to be conceded that the account in the Philadelphia Savings Fund Society, which embraces substantially the entire fund in controversy, had been opened by the decedent some time after the date of his last will and codicil.

Under Section 9 of the Wills Act of June 7, 1917, P. L. 403 (20 PS §221) it is provided: "Every will shall be construed, with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." With reference to bequests of personalty the general rule of the common law, in the absence of any statutory enactment, was that the will "was not referable to the state of the property, at the time of the making of the will, but was construed to take effect from the date of the testator's death, unless there were expressions in the will showing it was intended to describe the property with reference to the former and not to the latter date": *Fidelity Co's Appeal,* 108 Pa. 492, 499. No contrary intention appears in the will in question so as to alter the general principle of construction applicable under the common law or the Wills Act of 1917.

The underlying principle by which we are governed in seeking a solution of the question involved, is to ascertain the intention of the testator as expressed in his will.

. .At the outset we should bear in mind that the testator died unmarried and without issue. So far as the will itself discloses the only person designated by name, as the object of testator's bounty, is the appellant, Anna Borkowska Paczosa. In addition he "absolutely denies his brothers and sisters any right or any claim whatsoever. on their part to the inheritance of his property."

Quoting from *Leech's Estate,* 274 Pa. 369, 118 A. 354, the Supreme Court said (pp. 373, 374) : " 'Neither precedents nor rules of construction can override the testator's expressed intent': *Long's Est.,* 270 Pa. 480, 487; *Henry's Est.,* 271 Pa. 416. 'Rules of construction have no place in determining the intention of a testator where it is reasonably clear from the will itself': *Alburger's Est.,* 274 Pa. 10. 'The purpose in construing a will is to ascertain the intention of the testator, so that it may be carried out in the disposition which he has made of his property. Technical rules of construction should only be resorted to and applied in the interpretation of wills when found to be necessary in determining the meaning of the instrument, so as to effectuate the purpose of the testator. If the language employed by him in disposing of his estate is plain and clearly discloses his intention, the will interprets itself, and hence no rules of construction are necessary to aid in its interpretation ...... All mere technical rules of construction must give way to the plainly expressed intention of a testator, if that intention is lawful. It is a rule of common sense as well as law not to attempt to construe that which needs no construction': *Wood v. Schoen,* 216 Pa. 425, 428."

The court below held that the words "all my modest property" in the will are restricted by a description of particular property and that the codicil is but a re-affirmation of the will, and that the repetition in the codicil of the phrase "my modest property" does not govern the distribution of the estate, and that as to the personalty here being accounted for, the testator dies

intestate, and that "distribution must be determined by an analysis of the pertinent language of the will. A codicil is only permitted to change the will to the extent that it is inconsistent with it: *Schattenberg's Estate*, 269 Pa. 90."

Standing alone the words "my modest property" would undoubtedly carry the fund in controversy. Quoting from *Rossetter v. Simmons and Wife*, 6 S. & R. 452, 456, our Supreme Court said: "Property signifies every species of property; it is nomen generalissimum, and comprehends all his earthly possessions; it is equivalent to a disposition of 'all I am worth in the world', 'whatever else I have in the world', 'all my substance', which have been construed not only to pass land, but to pass the fee simple; it is stronger than worldly effects, which will carry real estate, if such appears from the whole will to be the intention of the testator." The word "property" naturally means personal as well as real property: *Moore's Estate*, 241 Pa. 253, 88 A. 432; *Foster's Estate*, 324 Pa. 39, 187 A. 399.

So far as the form of the codicil in the instant case is concerned, the authorities are clear that the following language of this codicil, constitutes a clear, testamentary disposition of all of the testator's property to the appellant: "Additional note: This document acquires legal power on the date of my decease and the court authorities competent in this section of the law are hereby requested kindly to deliver my modest property to the interested party, Anna Borkowska, without difficulties and unnecessary expenses to her. (Sgd) Jan Rzedzianowski."

In *Hand's Estate*, 315 Pa. 238, 172 A. 666, the Supreme Court said (p. 244): " 'It is uniformly held that words of recommendation, request, wish or expectation addressed to the executor and used in respect to the direct disposition of the testator's property are prima facie testamentary and imperative rather than precatory in effect, on the ground that the testator, having

a right to make such a disposition of his property as he thinks proper, the expression of his wish is deemed to be the expression of his will and the request is equivalent to a command': 49 Amer. Law Reps. Annotated 31; *Presbyterian Board of Foreign Missions v. Culp*, 151 Pa. 467; *Edward's Estate*, 255 Pa. 358; *Stinson's Estate*, 232 Pa. 218."

In *Wolfe's Estate*, 284 Pa. 169, 130 A. 501, the Supreme Court held that a written direction by a testator to the persons who were to administer his estate to turn over a specified sum of money to a particular person, is equivalent to a bequest to such person. The court well said: "The rule has been repeatedly stated that no formal words are necessary to make a valid will. The form of the instrument is immaterial so long as in substance, it is a gift intended to take effect after testator's death."

This direction to the competent court authorities to deliver "my modest property to the interested party, Anna Borkowska, without difficulties and unnecessary expenses to her", is the exact equivalent of a devise or bequest of the testator's property to her.

In *Foster's Estate*, supra, the Supreme Court repudiated the thought that the language of the codicil must be so construed as to make as little change in the body of the will as may be possible, and instead, ruled that where the language of the codicil is clear and its provisions are in conflict with the language of the original will, the provisions of the codicil must prevail.

The effect of the decision of the court below is to make the codicil mere surplusage. In *Moyer's Est.*, 280 Pa. 131, the Supreme Court held that unless no other conclusion is reasonably possible, an interpretation will not be adopted which makes any of the provisions of a will mere surplusage.

It is a fundamental and well established rule of construction of doubtful words contained in a will that

a partial intestacy is not to be presumed if the words used will carry the whole estate, and a construction is to be given a will which will avoid a partial intestacy unless the contrary is unavoidable. The countervailing presumption that an heir is never to be disinherited except by plain words or necessary implication has no application in the instant case, because the testator, in the preamble of his will, expressly states his intent to disinherit his brothers and sisters. See, *French's Estate*, 292 Pa. 37, 140 A. 549.

In *Reimer's Estate*, 159 Pa. 212, the Supreme Court said (p. 218): "It is a perfectly well established rule in the construction of wills in Pennsylvania, that no testator is presumed to die intestate as to any part of his property, if the words of the will will carry the whole. In the case of the *Appeal of the Boards of Missions*, 91 Pa. 570, Mr. Justice GORDON after reviewing the provisions of the will in question, said: 'From all this it would appear that the testator did not intend to die intestate as to any portion of his property, real or personal, and this intention must govern, unless there is something in the devise itself which forces us to a different conclusion; for it is a rule long and well settled that a will must be so construed as to avoid a partial intestacy unless the contrary be unavoidable.' " See also *Ingham's Estate*, 315 Pa. 293, 172 A. 662.

In *Nyce's Est.*, 5 W. & S. 254, 259, the Supreme Court said: "It is impossible to consider this will as a whole, as we are bound to do, without being forced to the conclusion that, by it, the testator intended to dispose of all his estate, real and personal. By the introductory clause he declares, 'As for what wordly estate wherewith it hath pleased God to bless me with in this life, I give and dispose of the same as followeth.' This, although not sufficient, of itself, to carry an estate or legacy clearly omitted, is strong evidence of a general intent not to die intestate as to any portion of the party's estate."

. · There is nothing in the instant case which makes it impossible to construe the words "my modest property" in the codicil, as referring to all of the testator's property and so avoiding a partial intestacy. The enumeration in the will of particular items after the gift in general terms "of all my property" by the use of the words "consisting of, etc." did not abridge or cut down the effect of the general words.

In *Graham v. Knowles,* 140 Pa. 325, testatrix's will was as follows: "All my estate, both real and personal, that I shall inherit as my portion after my father's death, I give and bequeath to my beloved cousins (naming them) their heirs and assigns forever." There the testatrix survived her father and thereafter acquired by purchase from a third party a certain ground rent, which she still owned at the time of her death. The question then arose whether this ground rent passed to the testatrix's legatee in the will, or whether there was an intestacy with respect thereto. It was contended by the decedent's heirs at law that in view of the fact that the gift to the legatee was of "all my estate, both real and personal that I shall inherit as my portion after my father's death," that nothing passed under the will except what decedent may have acquired by inheritance on her father's death. It was held that the words "that I shall inherit as my portion after my father's death" did not limit or restrict the general words, "all my estate both real and personal." The court pointed out that the "operative words" in the will were "all my estate both real and personal," and that the generality of these words was not restricted by anything that appeared in the context.

In *Williams v. Brice,* 201 Pa. 595, 51 A. 376, a testator devised "all the residue of (his) real estate, consisting of the one-sixth part of the following properties which (he) inherited from (his) father," (followed by an enumeration). After the making of his will, testator, in his lifetime acquired by purchase, and also by in-

heritance, additional interests in the said tracts so that at the time of his death, instead of owning a one-sixth part of the property described in the will, he owned a one-fifth interest. The question arose, did the difference between the one-sixth and one-fifth or the one-thirtieth interest which the testator acquired after the making of his will pass to the residuary legatee, or did the testator die intestate with respect to this interest, so that it must pass to testator's heirs at law. The court held that the interest passed to the legatee, and affirmed the judgment of the lower court which stated in its opinion: "The rule which protects the heir at law against being disinherited by conjecture cannot weigh, where, as in this instance, it was the clearly expressed intention of the testator at the date of making the will to exclude him, and no change occurs in the will during the balance of testator's life."

The court below relied on *McGlathery's Estate,* 311 Pa. 351, 166 A. 886. That case is, however, clearly distinguishable from the instant case in many respects. The will contained a residuary clause. The fact that the testatrix thought she had a residue to dispose of, in clearest terms indicated she did not think she was disposing of her entire estate to the legatee or devisee named in her will. It did not contain any provision disinheriting her next of kin. In addition, there was no codicil, as in the instant case, directing the court authorities to give to the legatee named "my modest property without difficulties and unnecessary expense to her," coupled with the fact that in the instant case, it is clear from the language of both the will and the codicil, that the appellant is the sole object of the testator's bounty.

*Howe's Appeal,* 126 Pa. 233, also relied upon by the court below, is clearly distinguishable. In that case there was no preamble to the testator's will, as in the instant case, indicating an intent to dispose of all testator's property by will, as also no declaration by the

testator of a specific intent to disinherit his next of kin. Both McGlathery's Estate and Howe's Appeal were proper cases for the application of the rule of construction that the heir is never to be disinherited except by plain words or necessary implication. There is no room for the application of this principle to the instant case, because testator here, in clearest possible language, expressly says: "In the event of my death, I absolutely deny my brothers and sisters any right or claim whatsoever on their part to the inheritance of my property."

To adopt the construction of the court below would be to award the fund in controversy to the very persons whom the testator in the strongest terms sought to disinherit. That construction of the will and codicil would be contrary to the clearly expressed intention of the testator.

It is our opinion that there was no intestacy as to any part of testator's property, real or personal. Hence there is nothing for the testator's brothers or sisters, or for any other of his next of kin who were not expressly disinherited, to take.

The question whether the testator was justified in seeking to disinherit his blood next of kin, and in giving his property to an utter stranger to his blood, is not a proper question for the consideration of the court. Our Supreme Court, in *Hogg's Est.*, 329 Pa. 163, 196 A. 503, said, with respect to argumentation along these lines: "These contentions as to the relative merits from a standpoint of abstract justice, of the alternative methods of distribution are not a proper subject of consideration by the court, since the judicial function is limited to the enforcement of testator's directions. If his language is clear it constitutes its own decree of distribution. The court may not speculate upon the question as to what testator might have provided in this case had he been endowed with prescience; the only inquiry is in regard to the actual pro-

visions of his will, and the criterion of their construction is the meaning of his words."

Judgment reversed and record remitted for further proceedings in conformity with this opinion. Costs to be paid out of the estate.